UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
BOUBOU NIMAGA,

                        Petitioner,

            - against -

LADEON FRANCIS, *in his official capacity as
Acting Field Office Director of New York
Immigration and Customs Enforcement*, *et al.*,

                        Respondents.
--------------------------------------------------------x

**MEMORANDUM & ORDER**
26-CV-2868 (PKC)

PAMELA K. CHEN, United States District Judge:

On May 14, 2026, Petitioner Boubou Nimaga, proceeding *pro se* through his next friend Ousmane Nimaga, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Pet., Dkt. 1.) He argues that his detention by U.S. Immigration and Customs Enforcement ("ICE") violates the Due Process Clause of the Fifth Amendment, as well as the Immigration and Nationality Act ("INA") and the Administrative Procedure Act ("APA"). (*Id.* ¶¶ 7, 16–19.) The Court granted the Petition via a docket order on May 29, 2026, indicating that "Respondents are detaining Petitioner under the wrong statute" and that a written decision would follow. (5/29/2026 Dkt. Order.) The Court now explains the reasons for granting the Petition.

**BACKGROUND**

**I.    Petitioner's Entry into the United States, Arrest, and Expedited Removal Order**

Petitioner Boubou Nimaga is a 30-year-old citizen of Mali. (Pet., Dkt. 1, ¶ 4; Vera Decl. Ex. A ("Form I-213"), Dkt. 6-2, at ECF[1] 2 (recording Petitioner's date of birth).) On September

---

[1] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

14, 2024, Petitioner entered the United States without inspection through the southern border and was apprehended by a U.S. Customs and Border Patrol ("CBP") agent near Lukeville, Arizona. (Vera Decl., Dkt. 6-1, ¶ 3.)  Petitioner admitted to the CBP agent that he had entered unlawfully. (*Id.* ¶ 4.)  CBP arrested Petitioner and transported him to a detention facility in Tucson, Arizona for further processing.  (*Id.* ¶ 5.)

The following day, September 15, 2024, CBP issued a notice and order of expedited removal pursuant to 8 U.S.C. § 1225(b)(1) ("Section 1225(b)(1)").  (*Id.* ¶ 7; Vera Decl. Ex. B ("Form I-860"), Dkt. 6-3.)  That document states that the Department of Homeland Security ("DHS") determined that Petitioner was inadmissible to the United States for lack of documentation.  (*See* Form I-860, Dkt. 6-3, at ECF 2); *see also* 8 U.S.C. § 1182(a)(7)(A)(i)(I) (making inadmissible any noncitizen[2] who, "at the time of application for admission," is "not in possession" of a valid entry document required by the INA's regulations).  DHS continued to detain Petitioner.  (*See* Vera Decl., Dkt. 6-1, ¶ 8.)

## II.   Petitioner's Asylum Claim, Vacatur of Expedited Removal Order, and Notice to Appear for Standard Removal Proceedings

Ten days later, on September 25, 2024, Petitioner expressed fear of returning to his home country of Mali.  (*Id.* ¶ 9; Vera Decl. Ex. C ("Form G-166C"), Dkt. 6-4, at ECF 2.)  Thus, as required by law, DHS scheduled Petitioner for an interview with an asylum officer from U.S. Citizenship and Immigration Services ("USCIS") to determine whether his fear was "credible." (*See* Vera Decl., Dkt. 6-1, ¶¶ 9, 11); 8 U.S.C. § 1225(b)(1)(A)(ii) (requiring immigration officers

---

[2] The Court uses the term "noncitizen" synonymously with the term "alien" in the INA, which means "any person not a citizen or national of the United States."  8 U.S.C. § 1101(a)(3); *see Barbosa da Cunha v. Freden*, 175 F.4th 61, 69 & n.1 (2d Cir. 2026) (doing the same).

to refer an arriving noncitizen for a credible fear interview with an asylum officer if the noncitizen "indicates either an intention to apply for asylum . . . or a fear of persecution").

Petitioner's credible fear interview took place on September 30, 2024.  (Vera Decl., Dkt. 6-1, ¶ 11.)  However, the government failed to provide an interpreter for Petitioner in his native language, Soninke.  (*Id.*)  Respondents represent that "[b]ecause no interpreter was secured, no questions were asked of Petitioner at the interview besides . . . Petitioner [being asked] to identify himself, state his birthday, and state the language he speaks, after which USCIS ended the interview."  (*Id.*)  Respondents further represent that "[n]o affirmative or negative credible fear finding was made."  (*Id.*)[3]  USCIS then decided to place Petitioner in standard (non-expedited) removal proceedings.  (*See id.* ¶ 13 (citing 8 C.F.R. § 208.30(b))); *see also* 8 C.F.R. § 203.30(b) (providing that a USCIS asylum officer can "refer the alien for [removal] proceedings . . . without making a credible fear determination" if they determine "that circumstances so warrant").  Accordingly, on October 2, 2024, USCIS vacated Petitioner's expedited removal order and issued a Notice to Appear ("NTA") for standard removal proceedings.  (Vera Decl., Dkt. 6-1, ¶ 12; *see* Vera Decl. Ex. D ("Form I-862"), Dkt. 6-5.)  The NTA categorized Petitioner as "an alien present in the United States who has not been admitted or paroled," but not as an "arriving alien."  (*See* Form I-862, Dkt. 6-5, at ECF 2.)

On October 9, 2024, ICE conducted a custody determination for Petitioner under 8 U.S.C. § 1226 ("Section 1226") and determined that Petitioner would be released "pending a final

---

[3] The Court notes, however, that the Form I-213 narrative associated with Petitioner's February 19, 2026 arrest contradicts Respondents' account.  (*See* Vera Decl. Ex. F ("I-213 Narrative"), Dkt. 6-7, at ECF 3.)  That document states that Petitioner "was found credible through his Credible Fear Interview" on September 30, 2024.  (*Id.*)  Respondents provide no explanation for this discrepancy.  For purposes of this Memorandum & Order, the Court assumes that Respondents have correctly represented that USCIS did not make any positive or negative credible fear determination.

administrative determination in [his] case." (*See* Vera Decl. Ex. E ("Interim Notice Authorizing Parole and Form I-286"), Dkt. 6-6, at ECF 3 (citing, *inter alia*, 8 U.S.C. § 1226).) On October 16, 2024, ICE issued an "interim notice authorizing parole" stating that Petitioner would be released from custody and temporarily paroled into the United States for up to one year. (*See id.* at ECF 2 (citing 8 U.S.C. § 1182(d)(5)(A)).)

Despite being issued on different dates, the NTA, notice of custody determination, and interim notice authorizing parole all appear to have been provided to Petitioner on October 16, 2024, which is presumably the day he was released from DHS custody. (*See* Form I-862, Dkt. 6-5, at ECF 3 (certificate of service for NTA dated October 16, 2024); Interim Notice Authorizing Parole and Form I-286, Dkt. 6-6, at ECF 2–3 (certificates of service for interim notice authorizing parole and notice of custody determination both dated October 16, 2024).)

### III.    Petitioner's Removal Proceedings and Re-Detention

On March 9, 2025, Petitioner appeared before an Immigration Judge ("IJ") who found that Petitioner was removable as charged in the NTA and set a schedule for him to file applications for relief from removal. (Vera Decl., Dkt. 6-1, ¶ 17.) Petitioner's "individual merits hearing" was scheduled for February 19, 2026. (*Id.* ¶ 18.) In the interim, on October 16, 2025, Petitioner's one-year grant of parole automatically expired. (*Id.* ¶ 19.)

Petitioner appeared in person for his hearing on February 19, 2026, and filed an application for relief from removal through counsel. (*Id.* ¶ 20.) For reasons unclear to the Court, despite Petitioner's appearance, the merits hearing "was adjourned." (*Id.*) ICE officers then apprehended and arrested Petitioner, seemingly in the immigration court. (*See* I-213 Narrative, Dkt. 6-7, at ECF 3.) They served him with a warrant for his arrest and took him into immigration detention at the Delaney Hall Detention Facility in Newark, New Jersey. (*See* Vera Decl., Dkt. 6-1, ¶¶ 24, 26; Vera Decl. Ex. G ("Form I-200"), Dkt. 6-8, at ECF 2.) On February 25, 2026, Petitioner was

4

transferred to the Metropolitan Detention Center ("MDC") in Brooklyn, New York.  (Vera Decl., Dkt. 6-1, ¶ 27.)

## IV.    Petitioner's Hearing and Removal Order

On April 6, 2026, Petitioner filed a request for a bond hearing before an IJ.  (*Id.* ¶ 28.)  The IJ held a hearing on the merits of Petitioner's removal case on April 13, 2026.  (*See id.* ¶ 31; Vera Decl. Ex. I ("IJ Order"), Dkt. 6-10.)  The IJ found Petitioner removable, denied his applications for asylum and withholding of removal, and ordered his deportation to Uganda or, in the alternative, Mali.  (IJ Order, Dkt. 6-10, at ECF 2, 4.)  On that same date, April 13, 2026, Petitioner withdrew his request for a bond hearing, (*see* Vera Decl. Ex. H, Dkt. 6-9); it is unclear whether he did so before or after the IJ ordered his removal.  On April 30, 2026, Petitioner appealed the IJ's removal order to the Board of Immigration Appeals, where it remains pending.  (Vera Decl., Dkt. 6-1, ¶ 32.)

## V.    The Instant Petition

Petitioner remains detained at the MDC.  (*See* Pet., Dkt. 1, ¶ 1.)  Since his re-detention, Petitioner has not received a bond hearing or any other form of individualized custody determination.  (*See generally id.*; Resp'ts' O.S.C. Resp. ("Resp."), Dkt. 6.)  Respondents contend that Petitioner is mandatorily detained without bond under Section 1225(b)(1)(B)(ii).  (Resp., Dkt. 6, at 1.)

Petitioner's uncle, Ousmane Nimaga, filed this habeas action as Petitioner's "next friend" on May 14, 2026, seeking Petitioner's release from custody.  (*See* Pet., Dkt. 1.)[4]  Later that day,

---

[4] "A person acting on behalf of the person for whom the habeas petition is filed is known as a 'next friend.'"  *Iza ex rel. Iza v. Larocco*, 814 F. Supp. 3d 357, 370 (E.D.N.Y. 2026) (citing *Whitmore v. Arkansas*, 495 U.S. 149, 161 (1990)).  "A 'next friend' does not himself become a party to the habeas corpus action in which he participates, but simply pursues the cause on behalf of the detained person, who remains the real party in interest."  *Id.* (quoting same at 163).  There are two requirements for the Court to find that the next friend has standing to pursue the petitioner's

the Court issued an order directing Respondents to show cause, in writing, "why a writ of habeas corpus should not be issued and why Petitioner should not be immediately released."  (O.S.C., Dkt. 3, at 1.)  Respondents filed their response on May 22, 2026.  (Resp., Dkt. 6.)  As previously referenced, on May 29, 2026, the Court granted the Petition via docket order.  (*See* 5/29/2026 Dkt. Order.)  This Memorandum & Order sets forth the Court's reasoning for doing so.  (*See id.* ("The Court's reasoning will be more fully explained in a written Memorandum & Order to follow.").)

## DISCUSSION

### I.      Petitioner's Statutory Detention Authority

Respondents contend that Petitioner is subject to mandatory detention under Section 1225(b)(1)(B)(ii).  (Resp., Dkt. 6, at 1.)  The Court disagrees.

---

case.  First, the next friend "must provide an adequate explanation—such as inaccessibility, mental incompetence, or other disability—why the real party in interest cannot appear on his own behalf to prosecute the action."  *Whitmore*, 495 U.S. at 163.  "Second, the 'next friend' must be truly dedicated to the best interests of the person on whose behalf he seeks to litigate. . . ."  *Id.*  Here, the Court finds that Mr. Ousmane Nimaga meets both prerequisites.  First, he has provided an adequate explanation for why Petitioner cannot litigate this action himself, which is that Petitioner's ability "to receive or send mail or sign documents is very limited" due to his current detention.  (Pet., Dkt. 1, at 1); *see Villa ex rel. Villa v. Warden*, --- F. Supp. 3d ----, No. 9:26-CV-0397 (BKS), 2026 WL 925828, at *3 (N.D.N.Y. Apr. 6, 2026) (finding adequate explanation for next friend standing where immigration habeas petitioner lacked, *inter alia*, "resources through which he could communicate with [the] Court").  Second, Mr. Ousmane Nimaga has shown that he is truly dedicated to Petitioner's best interests through his significant relationship with Petitioner (as his uncle) and his conduct litigating the Petition to date.  (Pet., Dkt. 1, at 1–2); *see Ndoye v. Joyce*, No. 25-CV-8856 (VSB), 2026 WL 306387, at *1 n.2 (S.D.N.Y. Feb. 5, 2026) (finding that the petitioner's wife had next friend standing and had demonstrated that she was truly dedicated to the petitioner's best interests through her "significant relationship" to the petitioner "and her conduct to date" in litigating the petition (collecting cases)).  Respondents have not opposed Mr. Ousmane Nimaga's request for next friend standing.  (*See generally* Resp., Dkt. 6.)  The Court therefore holds that Mr. Ousmane Nimaga has established next friend standing and may pursue this case on behalf of Petitioner while Petitioner remains the real party in interest. *See Aguiar Olivares v. ICE Custodian*, No. 9:26-CV-0203 (AMN), 2026 WL 686090, at *4 (N.D.N.Y. Mar. 11, 2026) (reaching same conclusion under similar circumstances and noting that "numerous courts in the Southern and Eastern Districts of New York have decided habeas petitions in recent months brought by a next friend with a significant relationship to a detainee" (citations and internal quotation marks omitted)).

6

A.      **Legal Framework**

Section 1225(b)(1) sets forth a type of deportation procedure known as "expedited removal." *See* 8 U.S.C. § 1225(b)(1).  Compared to "usual" removal proceedings under 8 U.S.C. § 1229a ("Section 1229a"), expedited removal "substantially shorten[s] and speed[s] up the removal process." *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 291 (E.D.N.Y. 2025) (quoting *Make the Rd. N.Y. v. Wolf*, 962 F.3d 612, 618–19 (D.C. Cir. 2020)), *appeal dismissed*, No. 26-219, 2026 WL 1208948 (2d Cir. Feb. 25, 2026).  "[U]nder Section 1225(b)(1), people subject to expedited removal are [also] subject to mandatory detention." *Id.* at 293.

In order for Section 1225(b)(1) to apply, several requirements must be met.  First, the noncitizen must be deemed "inadmissible" under 8 U.S.C. § 1182(a)(6)(C) or (a)(7).  8 U.S.C. § 1225(b)(1)(A)(i).  Second, the noncitizen must either (1) be "arriving in the United States," *id.*, *or* (2)(a) "not [have] been admitted or paroled into the United States," (b) "not [have] affirmatively shown . . . that [they have] been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility," *and* (c) be "designated" for mandatory detention and expedited removal by the Attorney General, *id.* § 1225(b)(1)(A)(iii)(I–II).[5]

Within Section 1225(b)(1), there is a special provision for noncitizens who "indicate[] either an intention to apply for asylum" or "a fear of persecution." *See id.* § 1225(b)(1)(A)(i).  In those situations, the immigration officer must refer the noncitizen "for an interview by an asylum

---

[5] Under requirement (2)(c) above, DHS has "designated" all noncitizens who fall within (a) and (b) for mandatory detention and expedited removal. *See Coal. For Humane Immigrant Rights v. Noem*, 805 F. Supp. 3d 48, 63–64 (D.D.C. 2025) (summarizing history of the DHS designations and explaining that "as of January 21, 2025, DHS asserts the authority to apply expedited removal to all noncitizens described in [8 U.S.C. § 1225(b)(1)(A)(iii)]").  Requirement (c) therefore does not, at this time, add any additional requirement beyond requirements (a) and (b). *See id.*

officer." *Id.* § 1225(b)(1)(A)(ii).  The purpose of that interview is to determine whether the noncitizen "has a credible fear of persecution," *id.* § 1225(b)(1)(B)(ii), which "means that there is a significant possibility . . . that the [noncitizen] could establish eligibility for asylum," *id.* § 1225(b)(1)(B)(v).  "If the [asylum] officer determines at the time of the interview that [the noncitizen] has a credible fear of persecution . . . , the [noncitizen] shall be detained for further consideration of the application for asylum."  *Id.* § 1225(b)(1)(B)(ii).  If, however, the asylum officer "determines that [the noncitizen] does not have a credible fear of persecution, the officer shall order the [noncitizen] removed from the United States without further hearing or review." *Id.* § 1225(b)(1)(B)(iii)(I).  In the meantime, the noncitizen "shall be detained . . . until removed." *Id.* § 1225(b)(1)(B)(iii)(IV).  Finally, in the alternative, the asylum officer can "refer the [noncitizen] for [non-expedited removal] proceedings . . . without making a credible fear determination" if the asylum officer and their supervisor "determine[] that circumstances so warrant." *Rodriguez-Acurio*, 811 F. Supp. 3d at 292 (quoting 8 C.F.R. § 208.30(b)).

**B.      Section 1225(b)(1) Is Inapplicable**

The Court agrees with and adopts, without repeating in full, the thorough and well-reasoned analysis in *Rodriguez-Acurio*, 811 F. Supp. 3d at 297–308.  Thus, the Court joins the majority of courts in this Circuit and across the country in holding that a noncitizen like Petitioner, who was initially detained under Section 1225(b)(1) but later granted parole under 8 U.S.C. 1182(d)(5)(A) ("Section 1182(d)(5)(A)"), is not subject to expedited removal and mandatory detention under Section 1225(b)(1) after the parole expires.  *See Munoz Materano v. Arteta*, 804 F. Supp. 3d 395, 413–14 (S.D.N.Y. 2025); *Qasemi v. Francis*, No. 25-CV-10029 (LJL), 2025 WL 3654098, at *5–13 (S.D.N.Y. Dec. 17, 2025); *Cabrera Martinez v. Marich*, 816 F. Supp. 3d 356, 364–73 (W.D.N.Y. 2025); *Iza ex rel. Iza v. Larocco*, 814 F. Supp. 3d 357, 373–75 (E.D.N.Y. 2026); *Ivonin v. Rhoney*, No. 6:25-CV-6673 (EAW), 2026 WL 199283, at *4–5 (W.D.N.Y. Jan. 26, 2026); *Mohd*

*v. Noem*, --- F. Supp. 3d ----, No. 2:26-CV-0680 (NJC), 2026 WL 363525, at *2–3 (E.D.N.Y. Feb. 9, 2026); *De La Cruz v. Rhoney*, No. 25-CV-6699 (MAV), 2026 WL 891658, at *6–10 (W.D.N.Y. Apr. 1, 2026); *Gomez-Talero v. Maldonado*, No. 26-CV-1625 (OEM), 2026 WL 926145, at *1–2 (E.D.N.Y. Apr. 6, 2026); *Torrez Arce v. Blanche*, No. 9:26-CV-0501 (ECC), 2026 WL 1430509, at *2–4 (N.D.N.Y. May 21, 2026); *see also Coal. for Humane Immigrant Rights v. Noem*, 805 F. Supp. 3d 48, 82–94 (D.D.C. 2025); *Suarez-Lugo v. Bondi*, 819 F. Supp. 3d 653, 665–68 (S.D. Tex. 2026); *Bueno v. O'Neill*, No. 26-CV-0304 (NQA), 2026 WL 413315, at *3–6 (E.D. Pa. Feb. 13, 2026); *Bashir K. A. v. Klang*, No. 25-CV-4559 (KMM) (DJF), 2026 WL 452353, at *4–7 (D. Minn. Feb. 17, 2026); *Cabrera-Lopez v. Hyde*, No. 2:26-CV-0017 (CR), 2026 WL 540131, at *4–7 (D. Vt. Feb. 26, 2026); *Martinez Herrera v. Olson*, No. 4:26-CV-0052 (DJH), 2026 WL 561101, at *2–5 (W.D. Ky. Feb. 27, 2026); *Murillo-Castillo v. Florentino*, No. 25-CV-16728 (MCA), 2026 WL 1383062, at *2–6 (D.N.J. May 18, 2026).  And here is why.

1.    Petitioner Is Not "Arriving"

As a matter of statutory interpretation, Petitioner was not "arriving in the United States" when he was re-detained by ICE in 2026, because he had entered the United States in 2024.  (*See* Vera Decl., Dkt. 6-1, ¶¶ 3, 22.)  As the Second Circuit very recently explained in *Barbosa da Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026), the use of a present participle like "arriving" or, in that case, "seeking," "denotes the verb's action as being in progress or incomplete at the time expressed by the sentence's principal verb." *Id.* at 77 (quoting *The Chicago Manual of Style* ¶ 5.114 (18th ed. 2024)).  In other words, when the INA uses the phrase "arriving," it refers to a noncitizen who is arriving "*right now*." *See id.* (citing *Carr v. United States*, 560 U.S. 438, 448 (2010)).  Here, Petitioner "has already arrived, was paroled, entered, and has now been present in the United States for over a year." *See Qasemi*, 2025 WL 3654098, at *6.  Therefore, he cannot qualify for Section 1225(b)(1) detention based on being an "arriving" noncitizen within the

9

meaning of Section 1225(b)(1)(A)(i). "It would try any plain understanding of the term arrival to classify an individual like [Petitioner] who has lived . . . in the United States for over a year prior to his re-detention as an arriving alien." *Id.*

> 2.   Petitioner Was Paroled Into The United States

Nor can Petitioner qualify for Section 1225(b)(1) detention through the other option under the statute: as a noncitizen "who has not been admitted or paroled into the United States," and who has not affirmatively shown that they have been physically present in the United States continuously for two years. 8 U.S.C. § 1225(b)(1)(A)(iii)(II). "Removing the negative, the statute states that if a noncitizen has *either* been 'admitted or paroled,' or has been continuously in the United States for 'a two-year period prior to a determination of inadmissibility,' the noncitizen is not subject to expedited removal (and the accompanying mandatory detention regime of Section 1225(b)(1))." *Qasemi*, 2025 WL 3654098, at *7. Here, by Respondents' own admission, Petitioner plainly *was* paroled into the United States in October 2024. (*See* Resp., Dkt. 6, at 7 (describing ICE's grant of discretionary parole to Petitioner under Section 1182(d)(5)(A)); Interim Notice Authorizing Parole and Form I-286, Dkt. 6-6, at ECF 2.) "The fact that [Petitioner] was paroled into the United States precludes application" of this provision, "regardless of whether that parole has since expired." *Mohd*, 2026 WL 363525, at *3. In effect, DHS's decision to parole Petitioner "moved [him] out of expedited removal proceedings and related mandatory detention" under Section 1225(b)(1). *Rodriguez-Acurio*, 811 F. Supp. 3d at 303. "That conclusion follows from the plain text of the statute." *Qasemi*, 2025 WL 3654098, at *8.

> 3.   Respondents' Arguments to the Contrary Are Unavailing

Respondents argue that "because Petitioner indicated . . . fear" and was referred to USCIS for a credible fear interview, Section 1225(b)(1)(B)(ii) "mandates that he 'shall be' detained pending consideration of his asylum application." (Resp., Dkt. 6, at 9 (quoting 8 U.S.C.

10

§ 1225(b)(1)(B)(ii)).)   That is wrong for multiple reasons.   First, and most obviously, Section 1225(b)(1)(B)(ii) states that if an asylum officer "determines at the time of the interview that an alien *has a credible fear of persecution . . .* , the alien shall be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii) (emphasis added).  But here, Respondents concede that the asylum officer "could not make a credible fear determination." (*See* Resp., Dkt. 6, at 7; *accord* Vera Decl., Dkt. 6-1, ¶ 11 ("No affirmative or negative credible fear finding was made.").)[6]  By the plain terms of the statute, then, Section 1225(b)(1)(B)(ii) is inapplicable.  *See Jimenez v. FCI Berlin, Warden*, 799 F. Supp. 3d 59, 69 (D.N.H. 2025) (finding Section 1225(b)(1)(B)(ii) inapplicable where the asylum officer "did not find that [the petitioner] had a credible fear of persecution" at the time of the interview).

Second, Section 1225(b)(1)(B)(ii) refers to detention pending "further consideration of *the* application for asylum."  8 U.S.C. § 1225(b)(1)(B)(ii) (emphasis added).  Here, that refers to Petitioner's initial asylum application, which ended with an inconclusive credible fear interview and a referral to standard removal proceedings.  Respondents would interpret the statute to require detention pending further consideration of *any* application for asylum, which runs afoul of the well-established rule that "the definite article 'the' particularizes the subject which it proceeds." *D.V.D. v. U.S. Dep't of Homeland Sec.*, --- F. Supp. 3d ----, No. CV 25-10676 (BEM), 2026 WL 521557, at *35 (D. Mass. Feb. 25, 2026) (quoting *Am. Bus. Ass'n v. Slater*, 231 F.3d 1, 4–5 (D.C. Cir. 2000)); *see also Nielsen v. Preap*, 586 U.S. 392, 408 (2019) ("[G]rammar and usage establish

---

[6] This fact distinguishes this case from *Lin v. Almodovar*, No. 1:25-CV-9639 (MKV), 2025 WL 3706626 (S.D.N.Y. Dec. 22, 2025), the primary case Respondents analogize to, (Resp., Dkt. 6, at 10–11).  *See Lin*, 2025 WL 3706626, at *1 (noting that an asylum officer "determined that [the petitioner] had a positive credible fear").  The Court also notes that the petitioner in *Lin* "conced[ed] that he [fell] within the scope of 8 U.S.C. § 1225(b)(1)(B)(ii)," *id.* at *3, and, as result, the decision contains very little reasoning on this issue and is not persuasive authority in this case.

that 'the' is a 'function word[,] indicating that a following noun or noun equivalent is definite or has been previously established by context.'" (citation modified) (quoting *Merriam-Webster's Collegiate Dictionary* 1294 (11th ed. 2005))).

The facts of this case illustrate the point. Petitioner has asserted different applications for asylum at different points in time. He first "applied" for asylum in September 2024 when he expressed a fear of being deported to his home country of Mali. (*See* Form G-166C, Dkt. 6-4, at ECF 2 (stating that Petitioner "expressed concerns regarding [his] safety if returned to [his] home country" on September 25, 2024, and that Petitioner would "undergo a credible fear interview to evaluate [his] claims" for asylum); I-213 Narrative, Dkt. 6-7, at ECF 3 (documenting that Petitioner's claim was treated as an "affirmative" application for asylum and was recorded on September 27, 2024).) USCIS considered that application (albeit barely, due to the government's failure to secure a translator). (*See* Vera Decl., Dkt. 6-1, ¶¶ 11, 13.) Then, USCIS made a decision on the application: namely, it decided (1) not to conduct another credible fear interview using an interpreter[7]; (2) not to grant or deny Petitioner's asylum claim; and (3) to issue an NTA and refer Petitioner for standard removal proceedings. *See* 8 C.F.R. § 208.30(b) (authorizing asylum officers with supervisory concurrence to refer noncitizens for standard removal proceedings under Section 1229a "without making a credible fear determination"); (Vera Decl., Dkt. 6-1, ¶ 13 (confirming that USCIS acted pursuant to 8 C.F.R. § 208.30(b)); Form I-862, Dkt. 6-5, at ECF 2 (showing that a "Supervisory Asylum Officer" from USCIS vacated Petitioner's expedited removal order and referred him to standard removal proceedings)). That decision effectively

---

[7] *See* 8 C.F.R. § 208.30(d)(5) ("If the alien is unable to proceed effectively in English, and if the asylum officer is unable to proceed competently in a language the alien speaks and understands, the asylum officer shall arrange for the assistance of an interpreter in conducting the interview.").

terminated Petitioner's "affirmative" asylum application; he filed a separate "defensive" asylum application several months later, on March 7, 2025. (*See* I-213 Narrative, Dkt. 6-7, at ECF 4 ("A data-based search [on February 19, 2026] indicates that [Petitioner] filed a defensive I-589 Application for Asylum for Withholding of Removal on March 7, 2025, which continue[s] to be pending with [the Executive Office for Immigration Review].   Record checks indicate that [Petitioner] does not have *any other pending or approved applications* with United States Citizenship and Immigration Services . . . ." (emphasis added)).)   To hold that Section 1225(b)(1)(B)(ii) continued to apply after Petitioner's first asylum application was terminated would contravene the plain language of the statute, and Respondents have pointed to no binding case law compelling a different conclusion.[8]

Third, Respondents cite to a number of regulations that they contend support their position that Petitioner must be detained because he has a pending asylum claim. (*See* Resp., Dkt. 6, at 9 (first citing 8 C.F.R. § 235.3(b)(2), (b)(4), (c); then citing 8 C.F.R. § 1208.30(g)(2)(iv)(B); and

---

[8] Respondents cite *Jennings v. Rodriguez*, 583 U.S. 281, 302 (2018), and *Matter of M-S-*, 27 I&N Dec. 509, 511–12 (A.G. 2019). (Resp., Dkt. 6, at 9.)  In *Jennings*, the Supreme Court stated that the "plain meaning" of Section 1225(b)(1)(B)(ii) "is that detention must continue until immigration officers have finished 'consider[ing]' the application for asylum." *Jennings*, 583 U.S. at 299 (alteration in original) (quoting 8 U.S.C. § 1225(b)(1)(B)(ii)).  That does not change the Court's conclusion that immigration officers "finished" considering Petitioner's asylum application when they referred him for standard removal proceedings.  Indeed, at that point, Petitioner was not obligated to renew an asylum claim as a defense to removal, although he ultimately chose to do so several months later. (*See* Resp., Dkt. 6, at 7 (acknowledging that, upon Petitioner's transfer to standard removal proceedings, "he *could* defensively claim asylum as a basis to remain in the United States" (emphasis added)).)  It defies logic and the statutory scheme as a whole to conclude that mandatory detention attaches to a noncitizen who was previously in expedited removal proceedings but is now in standard removal proceedings if, and only if, they assert an asylum defense.  To the extent *Matter of M-S-*, a 2019 decision by then-Attorney General William Barr, holds or suggests otherwise, the Court finds it wholly unpersuasive for the reasons discussed.  The Court is not bound by it and will not follow it.  *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 384–96 (2024) (holding that interpreting the meaning of statutes is a judicial function and agency interpretations are not entitled to deference).

then citing 8 C.F.R. § 208.30(a), (d)).)  Each of those regulations, however, is either inapplicable or immaterial.  *See* 8 C.F.R. § 235.3(b)(2)(iii) (describing detention and parole procedure applicable to "alien[s] whose inadmissibility is being considered," but not those whose inadmissibility has already been determined); *id.* § 235.3(b)(4)(ii) (describing detention and parole procedure "pending credible fear interview"); *id.* § 235.3(c)(2) (describing detention and parole procedure for noncitizens after USCIS finds credible fear and exercises jurisdiction); *id.* § 1208.30(g)(2)(iv)(B) (describing procedure for an immigration judge's review of a negative credible fear determination); *id.* § 208.30(a) (describing DHS's jurisdiction over regulation provisions); *id.* § 208.30(d) (describing procedure for USCIS credible fear interview).  The only arguable exception is 8 C.F.R. § 235.3(c)(1), which provides that "any arriving alien who appears to the inspecting officer to be inadmissible, and who is placed in removal proceedings pursuant to section 240 of the Act [codified at Section 1229a,] shall be detained in accordance with section 235(b) of the Act [codified at Section 1225(b)]."  *Id.* § 235.3(c)(1).  Here, however, when DHS placed Petitioner in standard removal proceedings, it determined that Petitioner was no longer an "arriving alien."  His NTA for his standard removal proceedings has a box DHS could check if Petitioner was "an arriving alien," and DHS notably did not check it.  (*See* Form I-862, Dkt. 6-5, at ECF 2 (checking box for "You are an alien present in the United States who has not been admitted or paroled,"[9] but not for "You are an arriving alien").)  That is strong evidence that the regulation (and Section 1225(b)(1) more generally) no longer applied.  *See Ribeiro v. Soto*, No. 26-CV-3898 (EP), 2026 WL 1430676, at *5 (D.N.J. May 21, 2026) ("If Petitioner's present detention was premised on § 1225(b)(1)(B)(ii), as the Government contends, the box for 'You are

---

[9] This form was issued before Petitioner was paroled.  (*Compare* Form I-862, Dkt. 6-5, at ECF 2 (dated October 2, 2024), *with* Interim Notice Authorizing Parole and Form I-286, Dkt. 6-6, at ECF 2 (dated October 16, 2024).)

an arriving alien' would be checked."). And, in any event, Petitioner certainly was not "arriving" at the time he was re-detained over a year later, as discussed *supra*.

Fourth and finally, Respondents argue that the expiration of Petitioner's parole under Section 1182(d)(5)(A) means that he must be returned to mandatory detention under Section 1225(b)(1). (Resp., Dkt. 6, at 11–12.) The Court disagrees for the reasons cited by the many other courts to reject that argument. *See, e.g.*, *Rodriguez-Acurio*, 811 F. Supp. 3d at 297–308; *Qasemi*, 2025 WL 3654098, at *5–13; *see also supra* (collecting cases).[10] The Court only returns to this point to emphasize that the record here is far from clear as to whether Respondents actually released Petitioner under Section 1182(d)(5)(A) or, in fact, Section 1226(a). (*Compare* Interim Notice Authorizing Parole and Form I-286, Dkt. 6-6, at ECF 2 (stating that Respondents were paroling Petitioner under Section 1182(d)(5)(A) in a notice dated October 16, 2024), *with id.* at ECF 3 (stating, one week earlier, that Respondents were releasing Petitioner "[p]ursuant to the authority contained in section 236 of the Immigration and Nationality Act," codified at

---

[10] Respondents' argument that *Rodriguez-Acurio* and *Qasemi* "were wrongly decided and should not be followed," (Resp., Dkt. 6, at 13–14), is flawed. Respondents argue that those decisions "render petitioners released on humanitarian parole as no longer 'arriving aliens,'" notwithstanding that [Barbosa] *da Cunha* cited the Supreme Court decision in *Leng May Ma* [*v. Barber*, 357 U.S. 185 (1958),] for the proposition that 'noncitizens paroled into the country' are treated 'as [if] stopped at the boundary line.'" (*Id.* at 14 (quoting *Barbosa da Cunha*, 175 F.4th at 75).) But the holding of *Leng May Ma* is much narrower than that. The case dealt with whether a noncitizen was "excludable" under a prior version of the INA, which has since been replaced with the terminology of "inadmissible." *See Fieran v. INS*, 268 F.3d 340, 343–44 (6th Cir. 2001) (citations omitted); *see also Leng May Ma*, 357 U.S. at 186 ("We conclude that petitioner's parole did not *alter her status as an excluded alien* or otherwise bring her 'within the United States' within the meaning of [a prior provision of the INA]." (emphasis added)); *Castaneda v. Bondi*, No. SA-26-CA-00830 (XR), 2026 WL 911416, at *7 (W.D. Tex. Mar. 23, 2026) (noting that *Leng May Ma* dealt with "challenges to *admissibility* determinations"). In line with *Leng May Ma*, Petitioner's parole did not alter his status as inadmissible, but that does not matter for purposes of this case, nor did it matter in *Rodriguez-Acurio* or *Qasemi*. *See Rodriguez-Acurio*, 811 F. Supp. 3d at 298 (observing that it was undisputed that the petitioner was inadmissible, but noting that inadmissibility is not the only requirement for Section 1225(b)(1) detention to apply; *Qasemi*, 2025 WL 3654098, at *3 (similar).

15

Section 1226).)  The record is also far from clear as to whether Respondents re-detained Petitioner under Section 1225(b) or Section 1226(a).  (*Compare* Vera Decl., Dkt. 6-1, ¶ 25 (stating that "Petitioner was detained [on February 19, 2026] under . . . 8 U.S.C. § 1225(b)(1)(B)(ii)" without citing any confirming documentation), *with* Form I-200, Dkt. 6-8 (showing that Petitioner was detained pursuant to a "Warrant for Arrest of Alien" under Section 1226).)  If Petitioner's re-detention was authorized under Section 1225(b)(1), as Respondents claim, there would be no need for them to issue a warrant for his arrest under Section 1226(a).  *See Qasemi*, 2025 WL 3654098, at *12 (observing that a similar arrest warrant that "expressly invoked the authority of Section 1226" was evidence that "the Government itself did not understand [petitioner] to be subject to mandatory detention under Section 1225(b)(1)"); *Souza v. Robbins*, No. 1:25-CV-1597 (DJC) (JDP), 2025 WL 3263897, at *2 (E.D. Cal. Nov. 23, 2025) (similar).

*     *     *

Ultimately, this case is not meaningfully different from the many others in which the Court has repeatedly rejected Respondents' statutory interpretation of the INA's detention provisions.[11]

---

[11] *See Galeas Miranda v. Maldonado*, No. 25-CV-6882 (PKC), 2026 WL 25405 (E.D.N.Y. Jan. 5, 2026); Order Dismissing Case, *Cordova Vera v. Tellez*, No. 26-CV-0018 (PKC) (E.D.N.Y. Jan. 27, 2026); *Yin v. Maldonado*, No. 26-CV-0103 (PKC), 2026 WL 295389 (E.D.N.Y. Feb. 4, 2026); *Ambroladze v. Maldonado*, No. 26-CV-0473 (PKC), 2026 WL 295405 (E.D.N.Y. Feb. 4, 2026); *R.A.R.R. v. Almodovar*, --- F. Supp. 3d ----, No. 25-CV-6597 (PKC), 2026 WL 323040 (E.D.N.Y. Feb. 6, 2026); *Colindres v. Tellez*, No. 26-CV-0663 (PKC), 2026 WL 509493 (E.D.N.Y. Feb. 23, 2026); *Figueroa Ocampo v. Noem*, No. 26-CV-0999 (PKC), 2026 WL 587643 (E.D.N.Y. Mar. 3, 2026); *J.R.R. v. Genalo*, No. 26-CV-1245 (PKC), 2026 WL 691803 (E.D.N.Y. Mar. 11, 2026); *Molina v. Maldonado*, No. 26-CV-1405 (PKC), 2026 WL 743291 (E.D.N.Y. Mar. 17, 2026); *Molina Lara v. Genalo*, --- F. Supp. 3d ----, No. 2:26-CV-1424 (PKC), 2026 WL 764539 (E.D.N.Y. Mar. 18, 2026); *G.H.H. v. Genalo*, No. 26-CV-1500 (PKC), 2026 WL 785315 (E.D.N.Y. Mar. 20, 2026); *N.G.C. v. Maldonado*, No. 26-CV-1559 (PKC), 2026 WL 816657 (E.D.N.Y. Mar. 25, 2026); *Leiva v. Shanahan*, No. 26-CV-1509 (PKC), 2026 WL 829119 (E.D.N.Y. Mar. 26, 2026); *Shirokikh v. Maldonado*, No. 26-CV-1794 (PKC), 2026 WL 936109 (E.D.N.Y. Apr. 7, 2026); *Arango Carmona v. Maldonado*, No. 26-CV-2005 (PKC), 2026 WL 972780 (E.D.N.Y. Apr. 10, 2026); *Lin v. Genalo*, No. 2:26-CV-2409 (PKC), 2026 WL 1352428

16

Although Respondents invoked Section 1225(b)(2)(A) then and they invoke Section 1225(b)(1) now, the outcome is the same: the Court again holds that Section 1225(b) does not apply. Rather, Petitioner's detention is governed by Section 1226(a), which provides that, "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a); *see also Barbosa da Cunha*, 175 F.4th at 97 (Cabranes, J., concurring) ("Because Petitioner was 'already in the country' and not 'seeking admission into' it, his detention is governed by [Section] 1226." (quoting *Jennings*, 583 U.S. at 289)).

## II.    Petitioner's Due Process Rights

Detention under Section 1226(a) is discretionary; immigration authorities "may release" the non-citizen on bond. 8 U.S.C. § 1226(a)(2). "[T]he discretionary authority in [Section] 1226(a) requires an individualized bond determination before a noncitizen may be taken into custody." *Hyppolite v. Noem*, 808 F. Supp. 3d 474, 485 (E.D.N.Y. 2025) (citing *Velesaca v. Decker*, 458 F. Supp. 3d 224, 241 (S.D.N.Y. 2020)); *accord Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 494 (S.D.N.Y. 2025) ("[I]t is clear that [Section] 1226(a) requires some exercise of discretion when determining whether or not to detain a noncitizen in the first instance.").

Here, Respondents effectively admit that they *did not exercise discretion* to re-detain Petitioner; rather, their position is that they detained him under the (incorrect) assertion that his detention was mandatory pursuant to Section 1225(b)(1). (*See* Resp., Dkt. 6, at 1 (stating that Petitioner is subject to "mandatory" detention under Section 1225(b)(1)(B)(ii)).) "Such an assertion is precisely the *opposite* of an exercise of discretion." *Lopez Benitez*, 795 F. Supp. 3d at

---

(E.D.N.Y. May 1, 2026); *S.G.V. v. Genalo*, No. 26-CV-2893 (PKC), 2026 WL 1492770 (E.D.N.Y. May 28, 2026).

17

495.  Respondents detained Petitioner pursuant to the wrong statute, without any individualized custody determination, prior notice, or opportunity to be heard.  Accordingly, for the reasons set forth in the Court's prior decisions, and hundreds of other decisions across the country, Respondents' actions violated the INA and Petitioner's procedural due process rights.  *See, e.g.*, *R.A.R.R. v. Almodovar*, --- F. Supp. 3d ----, No. 25-CV-6597 (PKC), 2026 WL 323040, at *4–5 (E.D.N.Y. Feb. 6, 2026) (applying balancing test of *Mathews v. Eldridge*, 424 U.S. 319 (1976), and concluding that the petitioner's detention under Section 1226(a) violated his procedural due process rights where Respondents erroneously treated the petitioner as subject to mandatory detention under Section 1225(b)); *see also Barco Mercado v. Francis*, 811 F. Supp. 3d 487, 504 (S.D.N.Y. 2025) (holding that the petitioner's detention "pursuant to the wrong statute violated due process"); *M.K. v. Arteta*, No. 25-CV-9918 (LAK), 2025 WL 3720779, at *2, *8–9 (S.D.N.Y. Dec. 23, 2025) ("Having determined that [Section 1225(b)(1)] is inapplicable to [an individual living in the United States for over two years], the Court concludes that [the petitioner's] detention pursuant to the wrong statute is unlawful."); *Yao v. Almodovar*, 813 F. Supp. 3d 461, 476 (S.D.N.Y. 2025) (concluding that "ICE's discretion-free detention of [the petitioner] abridged his rights under [Section] 1226 and violated due process," and collecting cases holding the same).[12]

The appropriate remedy for Petitioner's unlawful detention is release.  *See Yao*, 813 F. Supp. 3d at 477 ("A bond hearing after the fact, by definition, would not and cannot cure [the]

---

[12] Because the Court finds that Petitioner's detention violated his procedural due process rights, it does not separately address his substantive due process claim.  *See J.M.P. v. Arteta*, 807 F. Supp. 3d 265, 288 n.19 (S.D.N.Y. 2025) ("Because the procedural and substantive due process inquiries overlap, and because any distinction between the resulting remedies would be largely academic in this case, the Court does not separately address substantive due process concerns." (citation modified) (citing *Black v. Decker*, 103 F.4th 133, 142 n.12 (2d Cir. 2024))).  The Court also does not reach Petitioner's APA claim.  *See M.K.*, 2025 WL 3720779, at *9 n.80 (declining to reach APA claim where the petitioner's "statutory challenge [had] merit and warrant[ed] the requested relief").

constitutional violation.    Although [the petitioner's] release today cannot cure his loss of liberty . . . , this remedy, relative to the procedural one of ordering a bond hearing, is the one that comes closest to doing so." (collecting cases ordering same remedy)); *Y-C- v. Genalo*, No. 25-CV-6558 (NCM), 2025 WL 3653496, at *7 (E.D.N.Y. Dec. 17, 2025) (concluding that "no relief short of petitioner's immediate release would be appropriate or sufficient" in light of the constitutional violations suffered).

## CONCLUSION

The Petition for Writ of Habeas Corpus, (Pet., Dkt. 1), is granted.  The Court reiterates that Petitioner must not be re-detained by Respondents without notice and an opportunity to be heard at a pre-deprivation bond hearing before a neutral decisionmaker, at which Respondents will have the burden of showing that Petitioner's re-detention is authorized under Section 1226.  The Clerk of Court is respectfully directed to enter judgment consistent with this Order and close this case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated:  June 8, 2026
        Brooklyn, New York

19